IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Jagex Limited,** *Plaintiff,* v. **A boat on a quiet lake, *et al.,*** *Defendants.* | **SEALED** Civil Action No. |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO FILE UNDER SEAL

FACTUAL BACKGROUND

This is an action for trademark infringement and counterfeiting. Each Defendant is believed to be a non-U.S. entity, association, or individual, located in China, Hong Kong, Vietnam, or elsewhere in Asia, each of whom sells, offers for sale, distributes, and/or advertises goods through its virtual storefronts on various e-commerce marketplaces, such as Alibaba, AliExpress, Amazon, DHGate, eBay, Etsy, Joom, Printerval, Temu, Walmart, and Wish (each a "Marketplace" and collectively the "Marketplaces"). Plaintiff has moved for an *ex parte* TRO, seeking an order enjoining the continued sale of counterfeit and/or infringing products and freezing Defendants' assets held by the Marketplaces and Financial Institutions. This will ensure that Defendants do not transfer their ill-gotten gains to foreign bank accounts beyond the Court's jurisdiction. Plaintiff has also requested that the

Court issue an order to show cause why a preliminary injunction should not issue. Plaintiff has further moved this Court for authorization to serve the Summonses, Complaint, Orders and all other pleadings and papers on Defendants by electronic means.

Plaintiff now requests leave to file these Motions, as well as the Summonses, Complaint, supporting memoranda, supporting declarations, and proposed orders temporarily under seal until the Court has reviewed Plaintiff's *ex parte* motions and, if granted, until Plaintiff has had an opportunity to effectuate the relief granted therein. Additionally, Plaintiff requests that the names of all parties be sealed until such time. These measures are necessary to prevent Defendants from abusing public access to this Court's docket to obtain advance notice of Plaintiff's pending action in order to conceal themselves from service, destroy evidence, and remove their ill-gotten assets from the jurisdiction of this Court.

**LEGAL ARGUMENT AND CITATION OF AUTHORITY**

**I.    APPLICABLE LEGAL STANDARDS**

The common-law right of access to judicial proceedings is "an essential component of our system of justice" and "instrumental in securing the integrity of the process." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2007). However, the right of access is not absolute. *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 1312, 55 L.Ed.2d 570

(1978). To that end, Northern District of Georgia Standing Order No. 19-01 ("Standing Order") considers documents filed in the District Court to be "presumptively public" but allows for counsel to request sealing of any filing, requiring counsel to "exercise appropriate discretion" and establish good cause for sealing. *See* Standing Order No. 19-01 at II(J).

The standard a moving party must meet to establish good cause is set forth by the Eleventh Circuit and depends on the extent of the records for which sealing is sought. "In certain narrow circumstances, the common-law right of access demands heightened scrutiny of a court's decision to conceal records from the public and the media." *Chicago Tribune Co.*, 263 F.3d at 1311. When a trial court seals the record of an entire case, it must be shown that "the denial of access is necessitated by a compelling governmental interest and is narrowly tailored to that interest." *Id*. (citing *Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985)) (internal quotations omitted). Where, as here, a party is not requesting a seal over the entire record, the common-law right of access requires the court to balance the competing interests of the parties. *Id*. (citing *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) ("The historic presumption of access to judicial records must be considered in the balance of competing interests.")). A district court's determination regarding these competing interests is reviewable for abuse

of discretion. *Nixon v. Warner Communications, Inc.*, 435 U.S. at 599, 98 S. Ct. at 1312.

## II. THE BALANCE OF INTERESTS STRONGLY FAVORS A TEMPORARY SEAL

As a threshold matter, Plaintiff is not seeking a permanent and complete seal on the entire record in this case. Instead, Plaintiff is requesting a temporary seal over its initial pleadings and motions, specifically its Summonses, Complaint, Motion for TRO, and Motion for Authorization to Serve Process on Defendants by Electronic Means (along with supporting memoranda, supporting declarations, exhibits, and proposed orders) until the Court has reviewed Plaintiff's *ex parte* motion and, if granted, until Plaintiff has had an opportunity to effectuate the relief granted therein. A temporary seal over these records is necessary to prevent Defendants from obtaining advance notice of the pending lawsuit prior to a ruling on the TRO, destroying evidence, and transferring the proceeds from their sale of counterfeit goods outside the jurisdiction of this Court.

The Second Circuit has noted that "notice all too often appears to serve only to render fruitless further prosecution of the action." *In re: Vuitton et Fils S.A.*, 606 F.2d 1, 4-5 (2d Cir. 1979). The Third Circuit has similarly observed:

> Experience in hundreds of cases has shown that it is extremely likely that a counterfeiter, upon being apprised of the institution of a lawsuit by the trademark owner, will conceal his infringing merchandise and either destroy or conceal all records relating to this merchandise,

4

> thereby frustrating implementation of the trademark owner's statutory and common law rights.

*Louis Vuitton v. White*, 945 F.2d 569, 571 (3d Cir. 1991). Affording a defendant time to destroy evidence, hide assets, and effectively make a getaway "is precisely contrary to the normal and intended rule of notice." *In re: Vuitton et Fils S.A.*, 606 F.2d at 5. In enacting the Trademark Counterfeiting Act of 1984, which allows trademark plaintiffs to move for sealed, *ex parte* seizure orders, *see* 15 U.S.C. § 1116(d)(8), Congress established "that many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon." Joint Statement on Trademark Counterfeiting Legislation, Part G, 130 Cong. Rec. at H12076, H12078 (daily ed. Oct. 10, 1984). To that end, Congress concluded that keeping counterfeiters in the dark regarding pending legal action was necessary "to thwart the bad faith efforts of fly by night defendants to evade the jurisdiction of the court." *Id.*

The findings of the Second and Third Circuits, as well as the findings of the House and Senate Judiciary Committees, all occurred in an era before the widespread adoption of the Internet. Today, counterfeiters remain elusive, and their efforts to evade jurisdiction have no doubt been aided by the digital nature of their business operations. (Declaration of Jeffrey B. Sladkus ¶¶ 10-16.) Unlike their predecessors in the 1980s or 1990s, today's counterfeiters are capable of completely disappearing at a moment's notice. (*Id.*) Moreover, today's

counterfeiters abuse the public nature of judicial records by monitoring PACER for new federal filings before the Court can impose an *ex parte* TRO or a plaintiff can effectuate service. (*Id.* at ¶¶ 17-18.)

Plaintiff has moved for an *ex parte* TRO and Asset Freeze Order to enjoin Defendants from destroying evidence of their illegal activity and liquidating the accounts which they utilize to process their sales of counterfeit merchandise. Making Plaintiff's initial pleadings open to the public will give Defendants time to dispose of evidence and abscond with their ill-gotten gains before this Court can enjoin them from doing so. As a result, Plaintiff's trademark enforcement efforts would be stymied, and the community of counterfeiters would be permitted to continue its operations at great expense to trademark owners like Plaintiff.

Plaintiff recognizes and acknowledges the importance of public access to court records. However, Plaintiff's ability to preserve its intellectual property rights increasingly necessitates that the targets of its anti-counterfeiting efforts remain unaware that they are the subject of anti-counterfeiting measures. To that end, Plaintiff seeks a temporary seal over this matter until the Court has reviewed Plaintiff's *ex parte* motion and, if granted, until Plaintiff has served the TRO upon Defendants and the Marketplaces and financial institutions which they use to conduct their illegal business. Plaintiff anticipates this will take approximately one month from the date of filing, subject to the Court's schedule. A temporary seal is

a narrowly tailored remedy which effectively and appropriately balances the public's right of access to court records, ensures that Plaintiff's efforts to assert its trademark rights will not be in vain, and prevents Defendants from abusing the public availability of court records to aid their efforts to remove evidence and assets from the jurisdiction of this Court.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court permit Plaintiff to file its Summonses, Complaint, Motion for *Ex Parte* TRO, Motion for Authorization to Serve Process on Defendants by Electronic Means, supporting memoranda, supporting declarations, supporting exhibits, and proposed orders under seal until the Court has reviewed Plaintiff's *ex parte* motion and, if granted, until Plaintiff has had an opportunity to effectuate the relief granted therein.

Dated: October 7, 2025.

Respectfully submitted,
THE SLADKUS LAW GROUP

*s/ Jason H. Cooper*
Carrie A. Hanlon
Ga. Bar No. 289725
E-mail: carrie@sladlaw.com
Jason H. Cooper
Ga. Bar No. 778884
E-mail: jason@sladlaw.com

1397 Carroll Drive
Atlanta, GA 30318
Telephone: (404) 252-0900

                            Facsimile: (404) 252-0970

                            *Attorneys for Plaintiff*

## **CERTIFICATE OF FONT & SIZE SELECTION**

Pursuant to LR 7. 1(D), I certify that this paper was prepared with one of the font and point selections approved by the Court in LR 5.1(B).

                                            *s/ Jason H. Cooper*
                                            Jason H. Cooper